**Kim E. BROOKS, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Metropolitan Life Insurance Company, and Titan Insurance Company, Defendants.**

**No. 01–CV–71921–DT.**

United States District Court, E.D. Michigan, Southern Division.

April 30, 2002.

Ronald J. Bajorek, Birmingham, MI, for Kim E. Brooks.

Kay R. Butler, David M. Davis, Hardy, Lewis, Birmingham, MI, for General Motors Corp., Metropolitan Life Ins.

David C. Anderson, Troy, MI, for Titan Ins. Co.

*MEMORANDUM OPINION AND ORDER*

HOOD, District Judge.

## I. BACKGROUND/FACTS

Plaintiff Kim E. Brooks filed the instant suit against Defendants General Motors Corporation ("GM"), Metropolitan Life Insurance Company ("MetLife") and Titan Insurance Company before the Wayne County Circuit Court claiming: 1) breach of contract against GM and MetLife for failing to provide disability insurance based on Defendant GM's employee benefit program; 2) breach of contract against Titan Insurance Company based on an automobile insurance policy; and 3) declara-

tory relief against all three Defendants. Defendants GM and MetLife removed the matter based on the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*

Plaintiff is employed by Defendant GM as an hourly employee. Plaintiff is a member of the United Auto Workers Union ("UAW") and has been covered by various collectively bargained agreements between Defendant GM and the UAW, including the disability benefit plan at issue, the Supplemental Agreement Covering the Life and Disability Benefits Program for Hourly Employees (the "Plan"). Defendant GM has a self-funded Employee Welfare Benefit Plan and Defendant MetLife is the claims administrator of the Plan.

The Plan at issue negotiated by Defendant GM and the UAW provides for an Impartial Medical Opinion ("IMO") Program. If a claim for sickness and accident benefits is disputed, the IMO provides an impartial medical opinion where the employee is examined by an independent and impartial physician jointly selected by Defendant GM and the UAW. The IMO Program provides that the impartial opinions of the medical examiners are final and binding upon the employee, Defendant GM, the UAW, and Defendant MetLife. (Ex. B, Defendants' Brief, Art. I, Sec. 8) The IMO Program also provides for an administrative appeal procedure allowing a Plan participant to seek review and possible reconsideration of a denied claim. The steps are as follows:

Step 1. Following the receipt of the formal notification letter from Metropolitan by which the employee ... is advised of the reasons for the denial of his claim, the employee ... may request the representative whom his local union has designated to discuss [Plan] matters to review the reasons for the denial with the local management representative.

Step 2. The local management representative will review the employee's case with the local union benefit representative ... the local management representative ... will advise what, if anything, the employee ... can do to support the claim for payment of benefits ...

Step 3. If, after discussion with the local management representative, the local union benefit representative contests the position of Metropolitan as reflected by the local management representative he may refer the case on an appeal form provided for that purpose to the International Union for review with the Corporation. A copy of such appeal form shall be presented to the local management representative.

(Ex. B, Defendants' Brief, Procedure for Review of Denied Claims, pp. 98–100) The remaining steps involve the participation by the International Union; Defendants GM and MetLife.

Plaintiff was involved in an automobile accident in March 1998. Plaintiff filed under the Plan for benefits for five separate periods relating to the injuries she sustained from the accident. There is no dispute that Plaintiff received benefits resulting from two of the claims, the June 4, 1998 and November 29, 1999 claims. Plaintiff was denied benefits for the March 1998, April 2000 and July 2000 claims.

Plaintiff submitted a disability claim on March 18, 1998. Plaintiff underwent an IMO examination on May 18, 1998 performed by B. Jaqdale, M.D., an orthopedics specialist. Dr. Jaqdale concluded that Plaintiff was able to return to work at that time. The benefits were terminated on May 18, 1998, the date of the IMO examination. Plaintiff did not contest the denial through the process noted above.

On April 17, 2000, Plaintiff submitted another claim for sickness and accident benefits. On April 25, 2000, an IMO examination was conducted by A.N. Sinha, M.D., an orthopedics specialist. Dr. Sinha found Plaintiff disabled for another two weeks. On June 8, 2000, Plaintiff underwent another IMO examination by Dr. Sinha. Dr. Sinha found Plaintiff not disabled. The benefits were terminated after June 8, 2000. Plaintiff did not appeal or seek review of this decision through the process set forth above.

On August 10, 2000, Plaintiff submitted another claim for sickness and accident benefits claiming that she had been totally disabled since July 2000. Plaintiff's physician, Dr. John Pollina, submitted an Attending Physician's Statement, indicating a primary diagnosis of cervical radiculopathy and a secondary diagnosis of disc herniation, C–4 and C–5. A Notice of the independent examination was sent to Plaintiff's physician, Dr. Pollina, inviting him to provide any information to the examining physician, Dr. Sinha. Dr. Sinha performed the examination on August 10, 2000 finding that Plaintiff was not disabled and that Plaintiff was fit to return to work. Plaintiff's disability benefits were terminated after August 10, 2000. Plaintiff did not appeal or seek review of this decision through the process noted above.

Subsequent to the August 10, 2000 examination, Plaintiff submitted several additional attending physician statements from Dr. Pollina. Dr. Pollina extended Plaintiff's return to work date through January 2001. However, based on the IMO determination, no sickness and accident benefits were payable to Plaintiff beyond the August 10, 2000 date. Plaintiff was sent a letter dated August 28, 2000 indicating Defendant MetLife had reviewed her claim and based on the IMO examination indicating that Plaintiff was able to resume the duties of her occupation, no disability payments were made after the August 10, 2000 date. The letter also notified Plaintiff that she may request a review of the claim in writing. Plaintiff did not seek

review of the matter through the process set out by the UAW and Defendant GM.

Plaintiff claims that after August 10, 2000, her treating physician examined her and found her to be disabled on August 16, 2000, September 22, 2000, November 8, 2000 and on January 24, 2001. Plaintiff claims that the documents were submitted to and received by Defendant MetLife yet they never responded to those claims.

This matter is now before the Court on Plaintiff's and Defendants GM and MetLife's cross-Motions for Summary Judgment. Responses have been filed. Defendants GM and MetLife have also filed a Motion to Strike the documents which were not before the Plan Administrator.

## II. ANALYSIS

### A. Applicability of Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), in order for a summary judgment motion to prevail, the moving party must demonstrate that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law. When ruling on a Rule 56 motion, this Court must determine whether there are issues of material fact requiring a trial. In determining whether there are issues of fact requiring a trial "the inferences to be drawn from the underlying acts contained in the [affidavits, attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus., Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d. 176 (1962)). The party moving for summary judgment bears the initial burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories and admissions on file," to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. Thus, the nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita, supra,* at 586, 106 S.Ct. 1348. Significant probative evidence in support of the complaint must be presented in order to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

However, pursuant to *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir.1998), in a majority decision, the panel in *Wilkins* has set forth "Suggested Guidelines" to adjudicate ERISA actions.[1] The Sixth Circuit states that the Rule 56 Summary Judgment procedure is "inapposite to the adjudication of an ERISA action" because of the Circuit's "precedents [which] preclude an ERISA action from being heard by the district court as a regular bench trial." *Wilkins*, 150 F.3d at 619.[2] "[I]t makes little sense

---

1. The Panel included, Judges Ryan, Cole and Gilman. Judge Cole wrote the judgment of the court, which all three judges agreed to, affirming the district court's decision granting judgment in favor of the Plan Administrator and affirming the district court's ruling that no evidence which was not submitted to the Plan Administrator is to be considered by the court. Judge Gilman wrote the opinion regarding the summary judgment issue, which was agreed to by Judge Ryan but not by Judge Cole.

2. An ERISA claim is equitable in nature and therefore is not eligible for a *jury* trial. *Wilkins*, 150 F.3d at 616, *citing Bair v. General Motors Corp.*, 895 F.2d 1094, 1096 (6th Cir. 1990).

to deal with such an action by engaging a procedure designed solely to determine 'whether there is a genuine issue for trial.' " *Id.* The district court should not use neither the summary judgment nor the bench trial procedures in deciding ERISA actions. *Id.* at 620. As to the merits of the case, the district court should conduct a review based solely upon the administrative record and render findings of fact and conclusions of law. *Id.* at 619. If a procedural challenge is alleged, such as lack of due process afforded by the administrator or bias on its part, only then may the district court consider evidence outside the administrative record. *Id.* The discovery phase in an ERISA action will only cover the exchange of administrative record, and, if there is a procedural due process claim against the administrator, discovery is limited to evidence related to procedural challenges. *Id.*

Based on *Wilkins,* the Court will consider the parties' cross-Motions for Summary Judgment based upon a review of the administrative record. The parties have submitted documents which were before the Plan Administrator and outside the administrative record.

### B. *Defendants' Motion to Strike*

■ Defendants GM and MetLife seek to strike Exhibit 1 to Plaintiff's Brief, a narrative report prepared by Plaintiff's treating physician, Dr. Pollina dated April 3, 2001. Defendants GM and MetLife also seek to strike Plaintiff's Affidavit, Exhibit 2 to Plaintiff's Brief, as outside the Administrative Record.

In response, Plaintiff claims that even though the treating physician's medical report and Plaintiff's Affidavit are outside the administrative materials, such materials are admissible in consideration of the overall view of Defendants' arbitrary and unfair denial of Plaintiff's legitimate claim for disability benefits.

Plaintiff's affidavit indicates that she was never examined by Dr. Sinha on August 10, 2000 but that Dr. Sinha told her that she had been off work for too long and that she should go back to work. (Ex. 2, Plaintiff's Motion, Plaintiff's Aff., ¶ 2) Defendants GM and MetLife argue that Plaintiff is essentially claiming that the procedures employed were not proper. However, Defendants claim that Plaintiff's Complaint only alleges failure to pay benefits.

A review of the Complaint indicates that Plaintiff originally filed a breach of contract claim (Count I) against Defendants GM and MetLife for failing to pay benefits under the Plan. Plaintiff does not dispute that her claim, as to Count I is preempted by ERISA. A fair reading of Count I indicates that the breach of contract claim is essentially a claim for benefits. In *Livingston v. Central States, Southeast & Southwest Areas Health & Welfare Fund,* 900 F.Supp. 108, 113 (E.D.Mich.1995), the district court construed a state law claim, upon removal, as a claim for benefits under § 502(a)(1)(B), § 514 of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1144. This Court so construes Count I of Plaintiff's Complaint as a claim for benefits under 29 U.S.C. § 1132. The Complaint is void of any procedural claim against Defendants under § 503 of ERISA, 29 U.S.C. § 1133 nor any breach of fiduciary claim under 29 U.S.C. § 1109. Plaintiff has not sought to amend the Complaint to add any further claims such as a procedural claim against Defendants. At this juncture, Defendants and this Court have not been put on notice that Plaintiff is making a procedural claim, therefore, pursuant to *Wilkins,* the Court can only consider the documents before the Plan Administrator. Defendants' Motion to Strike Plaintiff's Ex. 1 to the Brief, Dr. Pollina's examination notes dated April 3, 2001 and Plaintiff's Ex. 2 to the Brief, Plaintiff's Affidavit is granted.

## C. *Review of Plan Administrator's Decision*

■ A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 103, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If a plan gives the administrator such discretion the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir. 1991). Such decisions are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Id.* at 984. "Discretionary authority" does not hinge on the word "discretion" or any other "magic word." *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir.1998)(en banc). Instead, the "lower courts are to focus on the breadth of the administrator's power-their authority to determine eligibility for benefits or to construe the terms of the plan." *Id.*

The district court has addressed the IMO Program at issue on a couple of occasions. *Harris v. Metropolitan Life Ins. Co.,* 542 F.Supp. 1 (E.D.Mich.1980) and *McCoy v. Metropolitan Life Ins. Co.,* 861 F.Supp. 40 (E.D.Mich.1994). Both plaintiffs in these two cases were hourly GM employees. The district courts held that because the Union and GM agreed that any dispute over the right to benefits would be resolved under the IMO program, the agreement is also binding on the plaintiffs. *McCoy,* 861 F.Supp. at 40–41, citing *Harris.* Both courts declined to review the medical opinions indicating that the third party's determination under an IMO program is the same as if an arbitrator has resolved a grievance under the collective bargaining agreement and is not open to challenge because a plaintiff disagrees. *Harris,* 542 F.Supp. at 1.

■ Based on *McCoy* and *Harris,* because the IMO Program was bargained for between the UAW and Defendant GM, all of the parties to the bargain, including Plaintiff, the UAW, and Defendant GM, are bound by the determination of the independent medical examination.

■ The Court further finds that the arbitrary and capricious standard applies in this case based on the agreement that the independent medical examiner's decision is binding on all the parties. This indicates that the Plan expressly gave the independent medical examiner sole discretion to decide any disagreement on whether an employee was entitled to benefits or not. The Plan Administrator's reliance on the independent medical examiner's determination was not arbitrary and capricious.

## D. *Failure to Exhaust*

■ ERISA requires plan beneficiaries to exhaust their administrative remedies. *Miller,* 925 F.2d at 986. Plaintiff has failed to show that she has appealed or sought review of the denials as set forth in the IMO Program bargained for between the UAW and Defendant GM. Plaintiff has not shown that she sought assistance from her Union representative as required by the IMO Program and the Plan. Plaintiff only claims that she submitted additional medical examination documents after August 2000 to Defendant MetLife. Plaintiff claims that those documents, although part of the administrative record, have never been acknowledged or addressed by Defendant MetLife. It appears that Plaintiff is correct in that Defendant MetLife has not addressed the subsequent documents submitted by Plaintiff. However, the IMO Program and Plan provide that if an employee disagrees with the determination, the employee is required to go through

Steps 1 to 3 and beyond, if the employee does not agree with the IMO determination. There has been no showing that Plaintiff has done so and at the hearing admitted that she had not done so. Plaintiff has failed to exhaust her administrative remedies.

As noted above, Plaintiff appears to raise a procedural claim against Defendants GM and MetLife as to the manner in which Plaintiff's claims have been handled. However, no motion to amend the Complaint is before the Court.

### E. *Defendant Titan Insurance Company*

 Defendant Titan Insurance Company remains in this case. The claim against Defendant Titan is a state law breach of contract claim. Defendant Titan admits that it is a Michigan resident. See Complaint, ¶ 4; Defendant Titan's Answer, ¶ 4. The Court has no original subject matter jurisdiction over the breach of contract claim against Defendant Titan pursuant to 28 U.S.C. § 1332. This matter must be remanded to State Court. "Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well." *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir.1990). The Court remands the matter back to State Court now that the federal ERISA claim has been dismissed. The only remaining claims are against Defendant Titan only.

### III. *CONCLUSION*

For the reasons set forth above,

IT IS ORDERED that Defendants GM and MetLife's Motion for Summary Judgment (Docket No. 18, filed February 28, 2002) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 19, filed February 28, 2002) is DENIED.

IT IS FURTHER ORDERED that Defendants GM and MetLife ONLY are DISMISSED with prejudice. Defendant Titan is the only remaining Defendant.

IT IS FURTHER ORDERED that Defendants GM and MetLife's Motion to Strike Material outside the administrative record (Docket No. 24, filed March 14, 2002) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for an Order Compelling Discovery (Docket No. 29, filed April 24, 2002) is MOOT.

IT IS FURTHER ORDERED that Defendant Titan's Motion to Compel Plaintiff to Attend a Physical Examination (Docket No. 30, filed April 25, 2002) is MOOT.

IT IS FURTHER ORDERED that the CLERK REMAND the matter FORTHWITH. It is directed that the Clerk prepare the necessary paperwork to effect the remand of this matter forthwith.